# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BONNIE PROSPER,<br><br>          *Plaintiff*,<br><br>     v.<br><br>THE ATTORNEY GENERAL OF ANTI-<br>GUA AND BARBUDA et al.,<br><br>          *Defendants*. | Civil Action No. 20-2279 (TJK) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Starting in 1994, Bonnie Prosper worked in several administrative roles in Washington, D.C. for the embassies of Saint Kitts and Nevis, Saint Lucia, Antigua and Barbuda, Saint Vincent and the Grenadines, and Dominica.  In 2017, she was laid off by these embassies.  Proceeding pro se, Prosper sued them, asserting several claims related to her termination.  The Saint Kitts and Nevis embassy settled with Prosper.  The other four embassies move to dismiss the case for failure to state a claim.  For the following reasons, the Court will grant in part and deny in part these motions and dismiss all but three of Prosper's claims.

## I.     Background

According to the complaint, in 1994, Prosper—a national of Antigua and Barbuda who became a U.S. citizen in 2010 and has resided in Maryland at all relevant times—began working as a receptionist and administrative assistant for the embassies of Saint Kitts and Nevis, Saint Lucia, Antigua and Barbuda, Saint Vincent and the Grenadines, and Dominica in the Organisation of Eastern Caribbean States ("OECS") Building in Washington, D.C.  *See* ECF No. 1 ¶¶ 1, 4–5, 9,

32; ECF No. 1-1 at 1, 20; ECF No. 1-2 at 1.[1]  Her "Letter of Appointment" listed her salary, warned her that taxes would not be withheld from her salary but were her responsibility to pay, mentioned the healthcare coverage the embassies would provide for her, stated that she would begin work with a "three month[] probationary period," and described her job duties.  ECF No. 1-1 at 1; ECF No. 1 ¶ 6.  The Letter of Appointment was silent on the duration of Prosper's employment or protections against termination, and besides healthcare coverage it did not mention employment-related benefits she would receive.  *See* ECF No. 1-1 at 1; ECF No. 1 ¶ 4.

Over time, Prosper's workplace responsibilities allegedly "dramatically increased," and she periodically requested and received salary increases.  *See* ECF No. 1 ¶ 6; ECF No. 1-1 at 3–5, 13, 15.  In 2009, Prosper wrote the embassies to ask them for a "definitive answer" about receiving "entitlement[]" benefits such as social-security- and pension-related benefits.  *See* ECF No. 1 ¶¶ 17–18; ECF No. 1-1 at 10–11.  In this letter, she requested that they "mak[e] the necessary provisions" to provide these benefits for her.  ECF No. 1-1 at 11.

In January 2010, the embassies responded.  *See* ECF No. 1 ¶ 19; ECF No. 1-1 at 12.  They told her that they would work on having her become an employee of the OECS Secretariat—how they would provide these benefits—said that they would pay her an "interim monthly allowance" of $250 until her "employment status" was "rectified," and "pledge[d] to have these issues resolved as quickly as possible."  ECF No. 1-1 at 12; *see also* ECF No. 19 at 5–6; ECF No. 32 at 4, 7.

Apparently, that did not happen.  *See* ECF No. 1 ¶ 20–21; ECF No. 1-1 at 13–16.  Instead, Prosper's employers allegedly acted repeatedly to "frustrate" and "embarrass[]" her in the

---

[1] At this stage, the Court construes Prosper's complaint liberally and considers all her filings in doing so, accepts her factual allegations as true, and draws all reasonable inferences in her favor. *See, e.g.*, *Beaulieu v. Barr*, No. 15-cv-896 (TJK), 2019 WL 5579968, at *1 (D.D.C. Oct. 29, 2019).

performance of her duties.  *See* ECF No. 1 ¶¶ 22–24.  Matters came to a head in July 2017, when Prosper received a "notice of separation of service" from the embassies informing her that she was being laid off effective August 31, 2017 because of a prospective sale of the OECS Building that rendered her "current post" redundant.  *Id.* ¶ 25; ECF No. 1-1 at 17.  The embassies offered Prosper a $35,000 severance package but said nothing about addressing the entitlement-related issues they had pledged before to resolve.  ECF No. 1-1 at 17.  Prosper responded, telling them that terminating her "without fulfilling their obligations to provide social security and other benefits would be a breach of contract" and that the severance-package offer was lower than what she was entitled to under the "severance laws in the OECS countries."  *See* ECF No. 1 ¶ 27.  The embassies replied on August 23, reiterating that Prosper would be laid off effective August 31 and offering her $45,000 as a "once-for-all payment of appreciation."  ECF No. 32-1 at 1.  Prosper eventually was laid off on August 31 "with no compensation."  ECF No. 1 ¶ 28.

Prosper's termination and subsequent events allegedly left her anxious, stressed, "severely depressed," and "emotionally drained."  ECF No. 1 ¶¶ 28, 36, 42.  She first sought unemployment benefits but was informed that she was ineligible because her employers made no such contributions on her behalf.  *Id.* ¶ 28.  It took her about eight months to find a new job.  *Id.* ¶ 29.  Through an attorney, she tried to negotiate with the embassies to resolve her nascent claims, but they did not respond.  *Id.* ¶ 33.  Prosper then sued the embassies in Antigua and Barbuda, which prompted the embassies to tell her that they were mulling an "amicable proposed settlement."  *Id.* ¶ 34.  But they later "abandoned the idea" and successfully got Prosper's Antigua and Barbuda lawsuit dismissed on jurisdictional grounds in June 2019.  *Id.* ¶¶ 34, 36, 38–40; ECF No. 1-1 at 18–19.  After that, Prosper again attempted to settle her claims amicably.  ECF No. 1 ¶ 41.  The embassies proposed that Prosper sign a release in exchange for $60,000.  *Id.*; ECF No. 1-1 at 20–21.  In January

2020, she counteroffered for $90,000, and she reiterated this counteroffer in February 2020 after not hearing back about it.  *See* ECF No. 1-1 at 22; ECF No. 32-1 at 2.

Prosper ultimately did not settle with them, and she sued on August 14, 2020.  *See* ECF No. 1; ECF No. 22 at 1.[2]  The Saint Kitts and Nevis embassy then settled with Prosper, while the other four embassies ("Defendants") moved to dismiss for insufficient service and for failure to state a claim.  *See* ECF No. 9; ECF No. 9-1; ECF No. 15; ECF No. 15-1; ECF No. 18.  The Court denied those motions without prejudice, agreeing that Prosper's attempts at service were insufficient but allowing her to perfect service.  *See* ECF No. 22.  Prosper then re-served Defendants. *See* ECF No. 28.  Now Defendants once more move to dismiss—the Saint Lucia embassy by itself; and the embassies of Antigua and Barbuda, Saint Vincent and the Grenadines, and Dominica jointly—this time arguing only that Prosper has failed to state a claim.  ECF No. 29; ECF No. 29-1; ECF No. 30; ECF No. 30-1.[3]

## II.    Legal Standards

A motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's complaint.  *See Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017).  To overcome such a

---

[2] Prosper named as defendants the attorneys general of each country, but she sued them in their capacity as official-capacity representatives of each country's ambassador and foreign-affairs minister.  *See* ECF No. 1 ¶¶ 10–14.  Thus, consistent with Defendants' understanding, the Court construes Prosper's claims as against the embassies.  *See* ECF No. 29-1 at 6 & n.1; ECF No. 30 at 1.

[3] Prosper filed two oppositions, ECF No. 32; ECF No. 33, Defendants filed two replies, ECF No. 34; ECF No. 35, and Prosper filed two surreplies, ECF No. 36; ECF No. 37.  Generally, "[b]efore filing a surreply," the party must seek leave to file it and show why granting such leave is warranted.  *See Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001); *Rushing v. Leavitt*, No. 03-cv-1969 (CKK), 2005 WL 555415, at *1 n.1 (D.D.C. Mar. 7, 2005). Prosper did not seek leave to file her surreplies.  That said, Defendants have not opposed them. Considering that, as well as Prosper's pro se status, the Court deems the surreplies properly filed and will consider them.  *See, e.g.*, *Olds v. Natsios*, No. 04-cv-1048 (JGP), 2006 WL 416157, at *2 n.4 (D.D.C. Feb. 22, 2006).

motion, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Doing so requires alleging sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In considering a motion to dismiss for failure to state a claim, the Court must treat a complaint's factual allegations as true and grant the plaintiff the benefit of all inferences that can flow from the facts alleged. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  Further, when a plaintiff proceeds pro se, the Court must construe the complaint "liberally." *See Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 322 (D.D.C. 2017).  And the Court typically "should look to all filings, including filings responsive to a motion to dismiss, to discern whether the [pro se] plaintiff has nudged her claims across the line from conceivable to plausible." *See Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018) (cleaned up).  That said, the "complaint must still present a claim on which the Court can grant relief." *See Untalasco*, 249 F. Supp. 3d at 322 (internal quotation marks omitted).  And in assessing this, the Court need not accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *See Peavey v. United States*, 128 F. Supp. 3d 85, 93 (D.D.C. 2015).

## III.   Analysis

Construing her complaint liberally and considering it through the lens of her other filings, the Court discerns that Prosper has asserted four sets of claims.  First, she asserts three distinct breach-of-contract claims.  Second, she brings a claim for wrongful discharge in violation of public policy.  Third, she alleges intentional infliction of emotional distress ("IIED").  And fourth, she asserts several related claims for violating social-security-, severance-pay-, and pension-related

legal obligations ("Entitlement Claims").[4]  Defendants move to dismiss all of Prosper's claims for failure to state a claim.  For the following reasons, the Court will dismiss all of them except two of her breach-of-contract claims and her severance-pay Entitlement Claim.

### A.    The Court Will Dismiss One of Prosper's Breach-of-Contract Claims but Permit the Other Two to Proceed

As best the Court can tell, Prosper alleges that Defendants breached two different contracts they had with her—a general employment contract as well as a contract embodied in the embassies' January 2010 letter to Prosper—in three different ways.  As for the general employment contract, Prosper alleges that Defendants violated it in laying her off because she was not an at-will employee ("At-Will Claim").  *See* ECF No. 1 ¶ 4; ECF No. 32 at 8.  As for the January 2010 contract, Prosper alleges that Defendants violated it both by laying her off without first rectifying her employment status to ensure she would receive social-security- and pension-related benefits ("Rectification Claim") as well as by failing to keep paying her the $250 monthly "allowance" until her employment status was rectified ("Allowance Claim").  ECF No. 1 ¶¶ 17, 19–20, 27, 44.  Defendants argue that Prosper failed to state a claim as to any of these, contending that each claim is barred by the statute of limitations and otherwise fails as a matter of law.  ECF No. 29-1 at 9–14; ECF No. 30-1 at 15–16.  As explained below, District of Columbia law governs these claims, the applicable statute of limitations does not bar them, Prosper has failed to allege sufficient facts to make plausible her At-Will Claim, and Prosper has alleged sufficient facts to make plausible the Rectification Claim and Allowance Claim.  Thus, the Court will dismiss the At-Will Claim but allow the other two to proceed.

---

[4] Some of Prosper's allegations could be read to assert an employment-discrimination claim of some kind, but Prosper has explicitly disclaimed that she has brought such a claim.  *Compare* ECF No. 1 ¶¶ 16, 32, *and* ECF No. 1-1 at 22, *with* ECF No. 19 at 7, *and* ECF No. 32 at 8.

### 1.      District of Columbia Law Governs These Claims

Because Prosper sues several foreign embassies, this case is governed by the Foreign Sovereign Immunities Act ("FSIA").  *See Virtual Defense & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 15 (D.D.C. 2001).[5]  Under the FSIA, a foreign-state entity that is subject to suit "shall be liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 1606.  This provision is a "'pass-through' to the substantive law that would govern a similar suit between private individuals," including the choice-of-law rules that would ordinarily apply in the suit.  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1508 (2022).  Prosper's breach-of-contract claims are state-law claims, so the Court must apply District of Columbia choice-of-law rules to determine the governing substantive law.  *See, e.g.*, *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 162 (D.D.C. 2013) (citing *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009)).

As pertinent to these claims, the "District of Columbia employs a modified governmental interest analysis" for its choice-of-law rule, "under which the court evaluates the governmental policies underlying the applicable laws and determines which jurisdiction's policy would be most

---

[5] Ordinarily, foreign states and their instrumentalities have sovereign immunity—which is jurisdictional, *see Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n.5, 489 n.14, 493 n.20 (1983)—but the FSIA waives that immunity in some cases.  *See* 28 U.S.C. §§ 1604–07.  As relevant here, foreign-state entities are not immune from suit "in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2); *see also id.* § 1603(d).  Prosper's claims are based on her employment as a receptionist and administrative assistant by Defendants in Washington, D.C.  Thus, this case fits within the commercial-activity exception.  *See, e.g.*, *Youssef v. Embassy of United Arab Emirates*, No. 17-cv-2638 (KBJ), 2021 WL 3722742, at *6–10 (D.D.C. Aug. 23, 2021); *Jouanny v. Embassy of France in the U.S.*, No. 16-cv-135 (APM), 2017 WL 2455023, at *2 n.2 (D.D.C. June 5, 2017).  Defendants do not argue otherwise.  *Cf. Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[T]he [FSIA] defendant bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity.").

advanced by having its laws applied to the facts in the case." *Chandler v. W.E. Welch & Assocs., Inc.*, 533 F. Supp. 2d 94, 104 (D.D.C. 2008) (cleaned up).[6]  "For breach of employment contract claims," this analysis generally dictates applying "the law of the state in which the alleged contract was breached because that state has the greatest interest in protecting the rights of its employees." *See id.*; *see also Lanny J. Davis Assocs.*, 962 F. Supp. 2d at 161–62.  In this case, that is the District of Columbia.  *See, e.g.*, *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997).  For this reason, the Court applies District of Columbia law to Prosper's breach-of-contract claims.  *See Virtual Defense & Dev. Int'l*, 133 F. Supp. 2d at 16.

## 2.     These Claims Are Not Barred by the Statute of Limitations

Defendants argue that all of Prosper's breach-of-contract claims are barred by the applicable statute of limitations because the July 2017 separation notice started the clock and the time expired before Prosper filed suit in August 2020.  Not so.

In the District of Columbia, a three-year statute of limitations governs breach-of-contract claims like Prosper's.  *See* D.C. Code § 12-301(7); *Prouty v. Nat'l R.R. Passenger Corp.*, 572 F. Supp. 200, 205 (D.D.C. 1983).  Thus, Prosper had to bring these claims "within three years" following their "accrual."  *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C. 1984).  "It is settled that 'a cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach.'"  *Billups v. Lab. Corp. of Am.*, 233 F. Supp. 3d 20, 23 (D.D.C.

---

[6] Typically, before undertaking this analysis, the Court must "first determine whether there is a conflict between the laws of the relevant jurisdictions."  *See Eli Lilly & Co. v. Home Ins.*, 764 F.2d 876, 882 (D.C. Cir. 1985) (citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970)).  But the parties did not brief the "nuances" of any other relevant jurisdiction's laws, so the Court assumes that a conflict exists here and elsewhere.  *See Lanny J. Davis & Assocs.*, 962 F. Supp. 2d at 162 n.4.  Also, District of Columbia courts generally give effect to choice-of-law terms in contracts. *See, e.g.*, *Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 103 (D.D.C. 2006).  But no such choice-of-law term exists here.  *See* ECF No. 1-1 at 1–2, 12.

2017) (brackets omitted) (quoting *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008)).  And a breach occurs "when a party fails to perform an obligation the contract imposes" when such performance is due.  *See Athridge v. Aetna Cas. & Sur. Co.*, No. 96-cv-2708 (RMU/JMF), 2001 WL 214212, at *5 (D.D.C. Mar. 2, 2001); *Eastbanc*, 940 A.2d at 1004.

Here, the relevant performances were due when Prosper was terminated on August 31, 2017.  That is, by that day, Defendants had to perform their purported duties to not terminate Prosper given her non-at-will employment status, to rectify her entitlement-related issues, and to keep paying her the $250 allowance until they did so.  When Defendants still went ahead and laid her off and stopped paying the $250 allowance, they breached the alleged contracts.  Thus, these claims accrued on August 31, 2017.  Because Prosper filed suit on August 14, 2020, these claims are timely by a few weeks.

In contending otherwise, Defendants argue, in effect, that the breach occurred for statute-of-limitations purposes in July 2017, when Prosper received the separation notice.  Although this position is not without some footing in decisions from this District, the Court disagrees.

In *Eastbanc*, the District of Columbia Court of Appeals addressed when a breach-of-contract claim accrues in circumstances like this, when the plaintiff has notice that the other party to the contract plans to breach it before the actual breach.  *See* 940 A.2d at 1004–08.  In that case, the defendants argued that the three-year statute of limitations started to run on the date that they anticipatorily repudiated the contract, which preceded when performance was due.  *Id.* at 1001, 1004–06.  The court rejected this argument, emphasizing that "for purposes of applying the statute of limitations, there is a crucial difference between repudiating a contract and breaching it."  *Id.* at 1006.  And it reasoned that, generally, an "actual breach" is required to start running the statute-

of-limitations clock, regardless of the plaintiff's "knowledge of a repudiation" before the breach. *See id.* at 1007–08.[7]

*Eastbanc* did not involve an employment contract, but the Court sees no reason why it would not apply in this context given that "[e]mployment contracts are governed by the same rules as other contracts." *See* 19 *Williston on Contracts* § 54:9, n.1 & accompanying text, Westlaw (4th ed. updated May 2022); *cf. Medhin v. Hailu*, 26 A.3d 307, 309–10 (D.C. 2011) (following *Eastbanc* where the contract at issue was a realtor-brokerage agreement). Under *Eastbanc*, Prosper's breach-of-contract claims accrued when the actual breach occurred—August 31, 2017—regardless of her knowledge in July 2017 that Defendants planned to breach at that time.

That said, Defendants rely on several cases from this District holding that a breach-of-contract claim accrued under District of Columbia law on the date that the plaintiff received notice of the breach, even though the notice preceded the conduct constituting the breach. *See Gauer v. Gallaudet Univ.*, 915 F. Supp. 2d 145, 147–48 (D.D.C. 2013); *LoPiccolo v. Am. Univ.*, 840 F. Supp. 2d 71, 77–79 (D.D.C. 2012); *Allison v. Howard Univ.*, 209 F. Supp. 2d 55, 59–60 (D.D.C. 2002). But to so hold, these cases each relied on distinguishable precedent—cases that either did not involve breach-of-contract claims, or else simply recognized that a breach-of-contract claim accrued when or *after* the breach occurred.[8] Moreover, none of these cases that came after

---

[7] The clock can begin to run before the breach, but typically this is so only when the plaintiff elects to "treat the anticipatory repudiation as a present breach," such as by suing immediately. *See Glenn v. Fay*, 281 F. Supp. 3d 130, 139 (D.D.C. 2017) (citing *Eastbanc*, 940 A.2d at 1004); *Nat'l R.R. Passenger Corp. v. Lexington Ins.*, 357 F. Supp. 2d 287, 294–95 (D.D.C. 2005). On the allegations currently before the Court, that did not happen here. *See* ECF No. 1 ¶ 27; ECF No. 32-1 at 1.

[8] *See Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 95–97 (D.D.C. 2012) (addressing when employment-discrimination claims under the District of Columbia Human Rights Act accrue); *Harris v. Ladner*, 828 A.2d 203, 206 (D.C. 2003) (per curiam) (holding that a breach-of-contract claim accrued when the plaintiff learned of the breach after it occurred); *Stephenson v. Am. Dental*

*Eastbanc* cited or discussed it.  Of course, the Court must follow *Eastbanc* rather than these district court decisions.

Defendants also invoke the District of Columbia's "discovery rule," under which the statute of limitations "begins to run when a party becomes aware that he has suffered harm which has been caused by another."  *See LoPiccolo*, 840 F. Supp. 2d at 77 (citing *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)).  The "discovery rule," however, is "generally applied to *toll* a statute of limitations."  *Azoroh v. Automobile Ins. Co. of Hartford, Conn.*, 200 F. Supp. 3d 127, 130 (D.D.C. 2016) (emphasis added) (citing *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003)); *see also Ehrenhaft*, 483 A.2d at 1201–03.  Defendants would turn the rule on its head by applying it to start running the statute-of-limitations clock before the breach occurred and thus before the clock would otherwise begin.  Such a holding appears irreconcilable with *Eastbanc*'s rule that a breach typically does not accrue until it occurs regardless of a party's awareness—or "discovery"—in advance that it is coming.  *See also Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 992 (D.C. Cir. 1998) ("[O]bviously a party can discover a breach only when it occurs or later.").  The Court thus declines the invitation to hold otherwise.[9]

---

*Ass'n*, 789 A.2d 1248, 1251–52 (D.C. 2002) (deciding when a common-law wrongful-discharge claim accrues); *Medhin*, 26 A.3d at 308, 311 (finding that a breach-of-contract claim accrued when the breach occurred); *Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 261 (1980) (addressing when employment-discrimination claims under Title VII and 42 U.S.C. § 1981 accrue).

[9] Apart from their notice-as-breach argument, Defendants do not contend that any of the purported duties underlying these claims were "first breached" at any time before August 31, 2017.  *See Commonwealth Land Title Ins. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019) (citing *Lieberman v. Aldon Constr. Co.*, 125 A.2d 517, 518 (D.C. 1956)).

### 3.      Prosper Failed to Adequately Plead Her At-Will Claim

Prosper alleges that her August 31, 2017 termination breached her employment contract because she was "not an 'at-will' employee" who could be laid off for the reasons Defendants gave. ECF No. 32 at 8–10; *see also* ECF No. 1 ¶ 4. She has failed to state this claim.

"In the District of Columbia, employees are presumed to be at-will employees." *Harley v. Covington & Burling, LLC*, No. 18-cv-2633 (RBW), 2020 WL 2514660, at *5 (D.D.C. May 15, 2020). Such employees "can be fired for any reason or no reason." *Le Fande v. District of Columbia*, 864 F. Supp. 2d 44, 48 (D.D.C. 2012) (citing *Wemhoff v. Investors Mgmt. Corp.*, 528 A.2d 1205, 1208 n.3 (D.C. 1987)). To overcome this presumption at the pleading stage, the plaintiff generally must allege facts making it plausible either that the parties "intended to contract for a fixed period of employment" or "that the agreed-upon employment can only be terminated upon specific preconditions." *See id.* (citing *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C. 1991)). But allegations that make plausible only an "expectation of continuing employment" are not enough. *See Herron*, 861 F.3d at 171–72.

Prosper's complaint lacks any allegation that makes it plausible that she was not an at-will employee. And some of her other filings undercut any such allegation, had one been made. For instance, Prosper's Letter of Appointment does not mention either a fixed period of employment or preconditions on her termination. *See* ECF No. 1-1 at 1–2. Thus, even giving Prosper every benefit-of-the-doubt that the Court must, the Court finds that she has failed to state this claim.

To resist this conclusion, Prosper argues that her Letter of Appointment does not specify that her employment was at-will. ECF No. 32 at 8. That is of no moment because under District of Columbia law her employment was presumptively at-will. Prosper also points out that she began her employment on a three-month probationary period, and she claims that once she

12

completed that period she became a "permanent employee." *See* ECF No. 1 ¶ 4; ECF No. 32 at 8. But without more, such as allegations that a "permanent employee" could be terminated only for specific reasons, this is not enough to plausibly overcome the at-will presumption. *Compare Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 766–67 (D.C. Cir. 2002), *and Choate v. TRW, Inc.*, 14 F.3d 74, 76–77 (D.C. Cir. 1994), *with United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 745–46 (D.C. Cir. 1998). Prosper also asserts that she was "hired under an A-2 visa." ECF No. 32 at 8; *see also* ECF No. 1 ¶¶ 2, 9.[10] But she does not explain the legal relevance of this fact, and the Court fails to see how it makes her At-Will Claim plausible. *See, e.g.*, *Sullivan v. Heritage Found.*, 399 A.2d 856, 858, 860–61 (D.C. 1979) (finding that an employee was terminable at will even though, among other things, he had moved from Boston to take the job).

Thus, the Court will dismiss Prosper's At-Will Claim.

### 4.    Prosper Adequately Pleaded Her Rectification Claim

Prosper also alleges that Defendants breached the contract embodied in the January 2010 letter by failing to rectify her employment status before termination to ensure that she would receive social-security- and pension-related benefits. ECF No. 1 ¶¶ 17, 19–20, 27; *see also* ECF No. 1-1 at 12. Prosper has adequately pleaded this Rectification Claim.

To sufficiently state this claim, Prosper had to plausibly allege "four necessary elements": "'(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Ihebereme v. Capital One, N.A.*, 730 F.

---

[10] A-2 visas are provided to "[d]iplomats and other foreign government officials traveling to the United States to engage solely in official duties or activities of their national government." *See* U.S. Dep't of State—Bureau of Consular Affairs, "Visas for Diplomats and Foreign Government Officials," *Travel.State.Gov*, https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html (last accessed Sept. 1, 2022).

Supp. 2d 40, 47 (D.D.C. 2010) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C.

2009)).  Here, granting Prosper the benefit of all reasonable inferences that can flow from the facts

alleged or are otherwise apparent in her filings, the Court finds all four elements present.

First, in exchange for her ongoing work for Defendants, Prosper asked them to make "the

necessary provisions" to modify her "status as an employee" to ensure that she would receive

social-security- and pension-related benefits.  *See* ECF No. 1-1 at 10–11.  In response, Defendants

told her that they would take steps to "rectif[y]" her "employment status" and "pledge[d] to . . .

resolve[]" these issues.  *Id.* at 12.  This exchange plausibly gave rise to a valid contract—Prosper

would keep working for Defendants, and Defendants would provide social-security- and pension-

related benefits for her.  *See Pearsall v. Alexander*, 572 A.2d 113, 117–18 (D.C. 1990); 3 *Williston

on Contracts* § 7:39, nn.9–10 & accompanying text, Westlaw (4th ed. updated May 2022).  Sec-

ond, by its own terms and when read in the context of Prosper's 2009 letter, the January 2010 letter

plausibly obligated the embassies to "rectif[y]" and "resolve[]" Prosper's social-security- and pen-

sion-related "issues."  *See* ECF No. 1-1 at 11–12; *see also 1010 Potomac Assocs. v. Grocery Mfrs.

of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (noting that a contract's "meaning must be ascertained

in light of all the circumstances surrounding the parties at the time the contract was made").  Third,

Defendants breached this obligation by not rectifying these issues before terminating Prosper.  *See,

e.g.*, ECF No. 1 ¶¶ 27–28, 30, 44.  Fourth, Prosper has suffered damages in losing out on these

monetary benefits.  *See, e.g.*, *id.* at 15.  Thus, Prosper has adequately pleaded this claim.

In arguing otherwise, Defendants contend that Prosper did not allege this claim in her com-

plaint.  *See* ECF No. 34 at 2.  That is incorrect.  *See* ECF No. 1 ¶¶ 17, 27; *see also* ECF No. 1-1 at

11–12.  They also argue that the January 2010 letter "does not include a single reference" to Pros-

per's social-security- and pension-related issues and so cannot give rise to obligations related to

them.  *See* ECF No. 35 at 3; *see also* ECF No. 29-1 at 13 n.7; ECF No. 30-1 at 12 & n.3.  But "these issues" in the January 2010 letter seems to be just such a reference, and in any event at this stage the Court must grant Prosper the benefit of all reasonable inferences that can be gleaned from the text and context of that letter.  *See* ECF No. 1-1 at 11–12.[11]

### 5.    Prosper Adequately Pleaded Her Allowance Claim

Prosper further alleges that Defendants breached the contract embodied in the January 2010 letter by failing to keep paying her the $250 monthly allowance post-termination despite not having rectified her social-security- and pension-related issues.  *See, e.g.*, ECF No. 1 ¶ 20.  Prosper has adequately pleaded this claim as well.

As the Court noted above, Prosper had to plausibly allege four elements to state this claim. And at this stage, the Court finds that she has done so.  First, the relevant exchange—Prosper's work from 2010 to 2017 for Defendants' payment of the interim allowance—plausibly gave rise to a valid contract.  *See Persall*, 572 A.2d at 117–18; 3 *Williston on Contracts* § 7:39, nn.9–10 & accompanying text.  Second, by the January 2010 letter's own terms, Defendants' obligation was to pay her the $250 allowance "until" they "rectified" her social-security- and pension-related issues.  ECF No. 1-1 at 12.  Third, Defendants breached this obligation by stopping payment of this allowance upon terminating Prosper, even though they had not "rectified" those issues at that time. *See* ECF No. 1 ¶ 20.  Fourth, Prosper has suffered damages in not receiving this monthly $250

---

[11] This claim might fail if, as Prosper also alleges, Defendants had a *non-contractual* legal obligation to provide these benefits.  *See* ECF No. 1 ¶¶ 27, 30, 44–45; *id.* at 15.  If true, then Defendants' promise to provide these benefits cannot give rise to an enforceable contract.  *See Eastbamc*, 940 A.2d at 1003; *Stafford v. George Washington Univ.*, No. 18-cv-2789 (CRC), 2019 WL 13160063, at *2 (D.D.C. Sept. 17, 2019); *Braude & Margulies, P.C. v. Fireman's Fund Ins.*, 468 F. Supp. 2d 190, 197 (D.D.C. 2007).  But Defendants do not argue this point.  And Prosper is allowed to plead inconsistent claims.  *See* Fed. R. Civ. P. 8(d)(3).

allowance since she was terminated. *See id.* at 15. Thus, Prosper has adequately pleaded her Allowance Claim.

Defendants argue that this obligation is unenforceable because it is not "sufficiently definite" such that "the promises and performances to be rendered by each party are reasonably certain." *See Virtual Def. & Dev. Int'l*, 133 F. Supp. 2d at 17 (internal quotation marks omitted); ECF No. 29-1 at 13. The Court fails to see how, at least at this stage of the proceedings. Defendants allegedly had to pay Prosper a precise amount of money every month until particular benefits-related "issues" Prosper had brought to their attention were "rectified." *See* ECF No. 1-1 at 12.

Defendants also argue that the January 2010 letter cannot be read to impose an obligation that would survive Prosper's termination. *See* ECF No. 29-1 at 13; ECF No. 30-1 at 15–16. To be sure, in interpreting the January 2010 letter, the Court must determine "what a reasonable person in the position of the parties would have thought" it meant in light of its own terms as well as "all the circumstances surrounding the parties at the time the contract was made." *See 1010 Potomac Assocs.*, 485 A.2d at 205. Of course, the Court does not have "all the circumstances" before it now to decide conclusively whether the letter required Defendants to keep paying the allowance post-termination. At this stage, however, it is at least plausible that it did. After all, Defendants' promise to pay Prosper $250 a month allegedly lasted "until" the issues she raised were "rectified"—the letter says nothing about this payment ending upon termination regardless of those issues getting rectified. *See* ECF No. 1-1 at 12. And plausibly, it is reasonable to understand this obligation as surviving termination, given that the allowance was a substitute for social-security- and pension-related benefits—benefits that ordinarily get paid post-employment.

Finally, Defendants argue that interpreting the January 2010 letter in this way reads a perpetual obligation into it. *See* ECF No. 29-1 at 13; ECF No. 30-1 at 15. Granted, "perpetual

contracts are disfavored." 17B C.J.S. *Contracts* § 608, n.11, Westlaw (updated Aug. 2022). But a contractual obligation is not impermissibly perpetual "where an objective event triggers termination." *See id.* That is allegedly the case here—the $250 monthly allowance would end once Prosper had been provided social-security- and pension-related benefits.

**B.     The Court Will Dismiss Prosper's Wrongful-Discharge Claim**

Prosper also alleges that she was "wrongfully terminated" by Defendants in that they laid her off to avoid having to fulfill those social-security- and pension-related obligations to her. *See, e.g.*, ECF No. 1 ¶¶ 33, 42; *id.* at 15; ECF No. 32 at 9–10. The Court construes this as a state-law claim for wrongful discharge in violation of public policy. The Court will dismiss it because it is barred by the statute of limitations.

Because District of Columbia choice-of-law rules applicable to Prosper's state-law claims require a "choice of law analysis for each distinct issue being adjudicated," the Court again must determine the substantive law governing this claim under District of Columbia choice-of-law rules. *See Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995). The Court must "apply the tort law of the jurisdiction that has the 'most significant relationship' to the dispute," which turns on (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered. *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) (quoting *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. 2006)). Here, all but the third factor unequivocally favor the District of Columbia, and the third factor itself points in different directions. Thus, the Court applies District of Columbia law to this claim. *See id.*

The District of Columbia recognizes the tort of wrongful discharge in violation of public policy. *See, e.g.*, *Davis v. Cmty. Alternatives of Wash., D.C., Inc.*, 74 A.3d 707, 709 (D.C. 2013).

A three-year statute of limitations governs it.  *See Stephenson v. Am. Dental Ass'n*, 789 A.2d 1248, 1249 (D.C. 2002) (citing D.C. Code § 12-301(8)).  Unlike for breach-of-contract claims, this tort claim accrues "the moment" the plaintiff has unequivocal notice—whether actual or constructive—of the wrongful termination, even if the termination happens later.  *See id.* at 1251–52 (citing *Diamond*, 680 A.2d at 372).

According to her own allegations, Prosper had unequivocal notice that she was being laid off for an allegedly wrongful reason in July 2017 when she received the separation notice.  *See* ECF No. 1 ¶¶ 25–27; *see also* ECF No. 1-1 at 16–17.  Thus, her claim accrued at that time.  That her "last day of work was to be [about forty-five] days after notice of termination" does not alter this conclusion.  *Stephenson*, 789 A.2d at 1252.  Because Prosper waited until August 2020 to bring this claim, it is time-barred.[12]

---

[12] Although Prosper does not explicitly raise any tolling argument, some of her assertions about settlement negotiations with Defendants could be construed as arguing for equitable tolling.  *See* ECF No. 1 ¶¶ 34, 41, 43; ECF No. 1-1 at 22; ECF No. 32 at 2–3, 8, 10–11; *see also Mizell v SunTrust Bank*, 26 F. Supp. 3d 80, 87 (D.D.C. 2014).  "District of Columbia courts recognize a restricted equitable tolling doctrine, which allows a plaintiff to initiate an action beyond the statute of limitations" if, as relevant here, the defendant affirmatively acted in a way that "lulled" the plaintiff into delaying filing suit until after the deadline passed.  *See Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 119 (D.D.C. 2012) (cleaned up); *see also East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156–57 (D.C. 1998).  This "lulling doctrine" is applied "narrowly."  *See East*, 718 A.2d at 157; *Chase v. D.C. Alcoholic Beverage Control Bd.*, 669 A.2d 1264, 1269 (D.C. 1995).  In essence, for the doctrine to apply in circumstances like those Prosper alleges here, the defendant must admit liability on the claim and agree to settle or otherwise resolve it, causing the plaintiff to reasonably believe that the claim will be resolved without the need for litigation until after the statute of limitations has run.  *See Bailey v. Greenberg*, 516 A.2d 934, 937 n.4, 937–40 (D.C. 1986); *Bakeir v. Capital City Mortg. Corp.*, 926 F. Supp. 2d 320, 336 (D.D.C. 2013).  Nor does the doctrine apply if "ample time to file suit within the statutory period exists after the circumstances inducing the delay have ceased."  *Property 10-F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970).  Here, what Prosper has asserted suggests, at most, that "negotiations looking toward an amicable settlement" happened at several points before she sued, which is "not enough" to trigger the doctrine.  *See Howard University v. Cassell*, 126 F.2d 6, 10–12 (D.C. Cir. 1941); *see also Glennan v. Lincoln Inv. Corp.*, 110 F.2d 130, 131 (D.C. Cir. 1940) (per curiam).  In any event, as her lawsuit in Antigua and Barbuda shows, Prosper had "ample time and opportunity to bring [t]his suit before the bar of the statute fell" despite those settlement negotiations, so

**C.      The Court Will Dismiss Prosper's IIED Claim**

Prosper also asserts a state-law IIED claim based on her "wrongful termination," its effects on her, and Defendants' subsequent decision to litigate rather than settle.  *See* ECF No. 1 ¶¶ 28–29; ECF No. 32 at 10–11; ECF No 33 at 4.  Prosper has failed to state such a claim.

To state an IIED claim under District of Columbia law, Prosper had to allege sufficient facts to make it plausible that Defendants engaged in (1) "extreme and outrageous conduct" that (2) "intentionally or recklessly" (3) caused her to suffer "severe emotional distress."  *See Hinton v. Rudasill*, 624 F. Supp. 2d 48, 52 (D.D.C. 2009) (quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007)).[13]  As for the first element, "the conduct alleged must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting *Kotsch*, 924 A.2d at 1045–46).  As that suggests, "the bar for pleading this tort . . . has been set very high."  *Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 26 (D.D.C. 2008).  Thus, for example, even allegations of blatant racial discrimination and of physical violence in the workplace have fallen short of stating an IIED claim.  *See, e.g.*, *id.* at 26–27 (collecting authorities).

Prosper's allegations fall short of plausibly alleging that Defendants' actions were "extreme and outrageous."  Defendants' decisions to lay Prosper off without providing social-security-

---

it is "out of the question to say that anything [Defendants] did lulled [Prosper] into inaction until after the limitation period."  *See Howard University*, 126 F.2d at 12; *Brown v. Lamb*, 414 F.2d 1210, 1212 (D.C. Cir. 1969) (per curiam).

[13] The applicable choice-of-law factors for this state-law tort claim yield more mixed results here compared to Prosper's wrongful-discharge claim because some of the relevant actions took place after Prosper was no longer employed in the District of Columbia.  *See Wu*, 750 F.3d at 949.  Even so, where, as here, it is "uncertain" which law the "balance of factors" favors, the Court applies District of Columbia law.  *See id.*

and pension-related benefits for her, and to refuse to settle her claims, are the sort of "insults" and "indignities" that are not actionable in an IIED claim under District of Columbia law.  *See Hollis*, 582 F. Supp. 2d at 26–27 (internal quotation marks omitted); *see also Hancock v. Washington Hosp. Ctr.*, 908 F. Supp. 2d 18, 27–29 (D.D.C. 2012).

### D.     The Court Will Dismiss All of Prosper's Entitlement Claims Except Her Severance-Pay Claim

Finally, Prosper alleges that, by failing to provide social-security- and pension-related benefits for her as well as by failing to pay her severance, Defendants violated their ostensible obligations under "the laws governing" them.  *See* ECF No. 1 at 15; *see also id.* ¶¶ 9, 15, 18, 27, 30, 44; ECF No. 32 at 3–7.  And although in discussing these claims she references U.S. federal law in a few places, she later clarifies that the "laws" she means are "the laws of [Defendants'] respective countries."  *Compare* ECF No. 1 ¶¶ 9, 30, *with* ECF No. 32 at 6–7.  For the following reasons, the Court will dismiss Prosper's social-security- and pension-related Entitlement Claims but allow her severance-pay Entitlement Claim to proceed for now.

#### 1.     At This Stage, the Court Concludes That "the Laws of the Respective Countries" Can Apply in This Case

Generally, under the FSIA, a plaintiff "may sue . . . under any cause of action arising from common law, foreign law, or federal statute."  *See Dodge v. Islamic Republic of Iran*, No. 03-cv-252 (TPJ), 2004 WL 5353873, at *4 (D.D.C. Aug. 25, 2004); *accord Dammarell v. Islamic Republic of Iran*, No. 01-cv-2224 (JDB), 2005 WL 756090, at *9 (D.D.C. Mar. 29, 2005).  Thus, that Prosper asserts these claims under the laws of each Defendant's country need not necessarily cause them to fail.

Defendants contend otherwise, viewing this as a choice-of-law issue governed by District of Columbia choice-of-law principles and arguing that District of Columbia law applies under

those principles.  *See* ECF No. 29-1 at 10 n.5; ECF No. 30-1 at 12–15; ECF No. 34 at 2.  But, at least for now, the Court finds their premise flawed.  Without question, a "federal court *assessing state-law claims* under the FSIA must apply the choice-of-law rules of the forum." *Roberts v. Islamic Republic of Iran*, 581 F. Supp. 3d 152, 173 (D.D.C. 2022) (emphasis added) (citing *Oveissi*, 573 F.3d at 841); *see also Virtual Def. & Dev. Int'l*, 133 F. Supp. 2d at 15.  But these are not state-law claims—they are foreign-law claims.  Thus, District of Columbia choice-of-law principles are inapt.  Indeed, this does not appear to be a choice-of-law issue at all but simply a question of whether the asserted foreign law is actionable in this Court.  *Cf. Indus. Piping, Inc. v. Wei Xia*, No. 4:15-cv-00450-EJL-CWD, 2018 WL 10517190, at *6 (D. Idaho May 30, 2018) (recognizing that where causes of action arise under another state's statutes, "the issue is not choice of law" but "whether there is a reason not to permit Plaintiff to enforce these foreign statutory causes of action" in the state (cleaned up)).  And again, generally, such law is actionable in an FSIA case such as this one.  *See Dodge*, 2004 WL 5353873, at *4.  Thus, with no other reason at this point to decide otherwise, the Court finds that the foreign laws on which Prosper relies for these claims can apply here.

### 2.  The Court Will Dismiss Prosper's Social-Security- and Pension-Related Entitlement Claims

That said, Prosper has not adequately identified the foreign-law basis for her social-security- and pension-related Entitlement Claims.  So the Court will dismiss these claims.

Typically, the party "seeking the application of foreign law has the burden of proving the relevant legal principles thereof." *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 67 (D. Mass. 2021) (collecting authorities); *see also* 9A Charles Alan Wright & Arthur R. Miller, 9A *Fed. Prac. & Proc. Civ.* § 2447, n.1 & accompanying text, Westlaw (3d ed. updated Apr. 2022) (collecting authorities).  This burden includes showing that she "has a good cause of action" under

the foreign law invoked.  *See Adams v. Arabian Am. Oil Co.*, 8 F.3d 25 (Table), 1993 WL 384568,

at *3 (9th Cir. Sept. 28, 1993) (per curiam) (citing *Esso Standard Oil S.A. v. S.S. Gasbras Sul*, 387

F.2d 573, 581 (2d Cir. 1967)).  If the party relying on foreign law fails to carry this burden, courts

tend to take one of two approaches.  *See* 3 *Litig. of Int'l Disputes in U.S. Cts.* § 18:14, nn. 2–3 &

accompanying text, n.5 & accompanying text, Westlaw (updated Aug. 2022).  Some courts apply

analogous domestic law instead of the foreign law.  *See Gilson v. Republic of Ireland*, 606 F. Supp.

38, 42–43 (D.D.C. 1984); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440–41 (3d Cir. 1999);

*In re Parmalat Secs. Litig.*, 377 F. Supp. 2d 390, 421 & n.211 (S.D.N.Y. 2005).  Other courts

simply dismiss a claim arising under the "unproven" foreign law.  *See Ancile Inv. Co. v. Archer*

*Daniels Midland Co.*, No. 08 CV 9492 (KMW), 2012 WL 6098729, at *3 (S.D.N.Y. Nov. 30,

2012); *Philp v. Macri*, 261 F.2d 945, 948 (9th Cir. 1958) (discussing *Cuba R.R. Co. v. Crosby*, 222

U.S. 473 (1912)).

Despite having several opportunities now to show that she has a viable foreign-law basis

for her social-security- and pension-related claims—in her complaint as well as in two rounds of

motion-to-dismiss proceedings—Prosper has not done so.  The only foreign law that she has called

the Court's attention to that seemingly has any relevance for these claims is "Section 5(b) of the

Pension Act Cap. 310."  *See* ECF No. 1 ¶ 15.[14]  This provision of Antiguan and Barbudan law

specifies certain "[c]ircumstances in which pension *may* be granted" to government employees,

___

[14] Prosper has identified provisions in two international agreements that purportedly support these claims; specifically, Article 33(1)–(2) of the Vienna Convention on Diplomatic Relations, Articles 4.1 and 23 of the Revised Treaty of Basseterre, and Article 12 of the Protocol of the Eastern Caribbean Economic Union of the Revised Treaty of Basseterre.  *See* ECF No. 19 at 2; ECF No. 21 at 2–4; ECF No. 32 at 1, 3, 5–7; ECF No. 37 at 1–3.  But even assuming these have any bearing here, they appear relevant only as pass-throughs to the laws of Defendants' countries.  *See* Vienna Convention on Diplomatic Rels. Art. 33(2)(b); *see also* ECF No. 32 at 6–7; ECF No. 37 at 1–4.  Thus, in themselves, they do not provide Prosper with a viable foreign-law basis for these claims.

one of which seemingly applies to Prosper's situation.  *See* Laws of Ant. & Barb., ch. 310, § 5(b) & Interpretation Note (emphasis added); *see also* ECF No. 30-1 at 13 n.4.  But the Court fails to see how this provision gives Prosper a *right* to a pension, let alone one that she can sue to enforce. This is all the more so because the immediately preceding section of this law says that "[n]o employee shall have the absolute right . . . to pension."  *See* Laws of Ant. & Barb., ch. 310, § 4(1). Thus, Prosper has not carried her burden of proffering the relevant foreign-law principles to show that her social-security- and pension-related claims are viable.

Thus, consistent with the above, the Court has two options: apply analogous domestic law or dismiss these claims.  But either approach yields the same result here.  Even if the Court applied analogous domestic law, Prosper's claims would fail because she lacks a private right of action under the Federal Insurance Contributions Act and related statutes that govern these sorts of entitlements in the United States.  *See Donnelly v. Sebelius*, 851 F. Supp. 2d 109, 121 n.5 (D.D.C. 2012); *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 65–66 (3d Cir. 2008); *McDonald v. S. Farm Bureau Life Ins.*, 291 F.3d 718, 721–26 (11th Cir. 2002).  Thus, the Court will dismiss Prosper's social-security- and pension-related Entitlement Claims.

### 3.    The Court Will Not Dismiss Prosper's Severance-Pay Entitlement Claim

At this stage, however, Prosper has shown a foreign-law basis for her severance-pay Entitlement Claim.  Thus, the Court will not dismiss it for now.

Prosper has identified four separate statutes ostensibly furnishing a basis for this claim— the Antigua and Barbuda Labour Code; the Dominica Protection of Employment Act; the Saint Lucia Labour Code; and the Saint Vincent and the Grenadines Protection of Employment Act.  *See* ECF No. 19 at 3; ECF No. 32 at 6.  At least one seems to do the trick.  Under the Antiguan and Barbudan statute, employees like Prosper are "entitled" to a specified amount in severance pay

from their employer if terminated for redundancy.  Ant. & Barb. Labour Code, ch. 27, §§ C3, C40, C41.  Further, the employer "shall" pay this severance at termination.  *Id.* § C42.  And an employee has a private right of action to sue for severance pay owed.  *See id.* § C55(1).  Altogether, then, Prosper's severance-pay Entitlement Claim appears well-founded on this statute.

Defendants' sole argument against this claim is simply that foreign law does not govern it—an argument that the Court rejected above, at least for the time being.  But, the Court observes, there may be other reasons why this statute is not a viable basis for Prosper's severance-pay Entitlement Claim.  And even if it is, there may be reasons why this statute provides only a limited basis for this claim—for instance, it may allow Prosper to sue only the embassy of Antigua and Barbuda rather than the other Defendants.  But these issues have not yet been briefed.  Thus, for now, the Court will allow this claim to proceed.

## IV.    Conclusion and Order

For all these reasons, it is hereby **ORDERED** that:

1. Defendant the Attorney General of Saint Lucia's Motion to Dismiss Plaintiff's Complaint, ECF No. 29, is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendants the Embassies of the Governments of Antigua and Barbuda, St. Vincent and the Grenadines, and Dominica's Renewed Motion to Dismiss, ECF No. 30, is **GRANTED IN PART** and **DENIED IN PART**;

3. The parties shall file a joint status report by September 28, 2022, addressing how they would like to proceed with the remaining claims in this case.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 12, 2022